IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


| | |
|---|---|
| JAMES N. PATNAUDE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 05-345-SLR |
| | ) |
| ATTORNEY GENERAL ALBERTO | ) |
| GONZALES and FEDERAL BUREAU | ) |
| OF INVESTIGATION, | ) |
| | ) |
| Defendants. | ) |

---

James N. Patnaude, Plaintiff, pro se.

Colm Connolly, United States Attorney for the District of Delaware and Seth M. Beausang, Assistant United States Attorney, Wilmington, Delaware. Counsel for Defendants.

---

**MEMORANDUM OPINION**

Dated: March 20, 2007
Wilmington, Delaware

*[signature]*
ROBINSON, Chief Judge

## I.   INTRODUCTION

Plaintiff James N. Patnaude, a former employee of the Federal Bureau of Investigation ("FBI"), filed this action against defendants Alberto Gonzales, in his official capacity as Attorney General of the United States, and the FBI. (D.I. 1)  Plaintiff asserts four claims for relief.  First, he contends that defendants terminated his employment and retaliated against him for filing a complaint with the Equal Employment Opportunity Commission ("EEOC") in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e et seq. (2000), and the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. §§ 633a et seq. (2000).  (Id.)  Second, plaintiff, a member of the FBI's Hazardous Materials Response Team, was exposed to anthrax and seeks compensation for any associated illnesses that may develop.  (Id. at 6-7, D.I. 14 at 12)  Third, plaintiff claims that defendants violated his civil rights by engaging in unfair hiring practices by denying his application for employment as a special agent because of a color vision deficiency. (D.I. 1)  Fourth, plaintiff avers that defendants have committed other discriminatory acts which, with the assistance of counsel, he can present to the court.  (Id.)  As part of his relief, plaintiff seeks to be reinstated to his position with the FBI.  (D.I. 14)

On July 11, 2006, defendants moved to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  (D.I. 6, 7)  Because defendants' papers included matters outside the pleadings, the motion was converted to a motion for summary judgment and plaintiff was afforded an opportunity to respond in light of the new standard of review.  See Fed. R. Civ. P. 12(b)(6).  (D.I. 12)  Plaintiff filed a lengthy

opposition to the motion to which defendants filed a reply. (D.I. 14, 15) The court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons that follow, defendants' motion for summary judgment will be granted.

## II.   BACKGROUND

The facts pertinent to this analysis, considered in the light most favorable to plaintiff, are as follows.[1] On February 16, 1999, plaintiff commenced working for the FBI as an intelligence research specialist ("IRS").[2] (D.I. 1) Plaintiff worked on various investigations including telemarketing fraud and child pornography. (D.I. 14, ex. 16) In addition to advanced degrees in accounting and business, plaintiff had experience as a volunteer fire fighter, HAZMAT responder and emergency medical technician. (Id., ex. 4) As a result, plaintiff also participated in "a number of assignments that most IRS's did not."[3] (Id., ex. 4 at 2-3)

---

[1] This background is taken almost exclusively from plaintiff's submissions and does not constitute findings of fact. (D.I. 1, 6, 7, 14)

[2] Sometime in or around 1995, plaintiff applied for a special agent position with the FBI. He claims to have been rejected for the position on the basis of his inability to distinguish certain colors (color vision deficiency). Plaintiff wrote a letter to the FBI Director requesting that the hiring decision be reconsidered and urged the FBI to change its policy of not hiring applicants with color vision deficiency. (D.I. 14, ex. 21) Plaintiff contends that the FBI applies the color vision deficiency rule arbitrarily by hiring certain applicants with the problem while excluding others similarly situated. Plaintiff was notified in June 1996 that the FBI would not change its decision on his employment application. (Id.)

[3] For example, according to plaintiff: (1) he was involved in the search and recovery at the Pentagon following the attacks on September 11, 2001; (2) he recovered the voice recorder of the airliner that crashed into the Pentagon; (3) he was assigned to anthrax investigations; and (4) he participated in the autopsies of Pentagon victims. (D.I. 1, ex. Time Line)

2

In 2001, plaintiff applied for a supervisory IRS position, however, another applicant was selected. (Id.) Around the same time, plaintiff's job performance was criticized by supervisors and case agents. (Id., ex. 20) Consequently, he was removed from the FBI HAZMAT team, advised to focus exclusively on his IRS responsibilities and was ordered to submit daily work reports. (Id.)

In April 2002, plaintiff filed a grievance with his Equal Employment Opportunity counselor ("EEO counselor") claiming unfair treatment by his supervisors. (Id., ex. 5) Shortly after filing the grievance, plaintiff began taking all materials related to the EEO complaint home each evening.[4] On May 21, 2002, plaintiff received an unfavorable rating and review by his supervisors. (Id.)

On May 30, 2002, plaintiff was stopped as he was leaving the FBI building. (Id., ex. 2 at 2, ex. 5) He consented to a search of his personal belongings and vehicle. Some of the items discovered in plaintiff's possession were: file review sheets; daily performance reports; criminal histories; documents, including some classified as secret and sensitive; HAZMAT training materials; and personal employment evaluations. (Id., ex. 5)

The following day, a criminal search warrant was executed at plaintiff's residence "for additional evidence of any classified documents."[5] (Id., ex. 5 at 2) Plaintiff's personal computer and ZIP diskettes were seized. (Id., ex. 15) Plaintiff maintained

---

[4]Plaintiff avers that his work desk was searched by FBI managers on May 24, 2002. (Id., ex. 15)

[5]The FBI Employee Handbook prohibits, inter alia, the removal of records from the work place. (Id., ex. 5 at 4)

3

documents relating to his personnel file and the EEO complaint on the ZIP diskettes. Because child pornography images were discovered on one of the diskettes, a criminal investigation was opened by the United States Attorney's Office. (Id. at exs. 2, 4)

In June 2002, plaintiff's credentials, building pass, government credit card and equipment were seized. (Id., ex. 15) Plaintiff denied mishandling documents, explaining that he meant to take home materials related to his EEO complaint and, inadvertently, removed other materials. Plaintiff was suspended from his job pending an investigation. (Id., affidavit of plaintiff)

In April 2003, the United States Attorney's Office declined prosecution of plaintiff for "any violations of U.S. Statutes concerning the mishandling of classified information as well as the possession of child pornography." (Id., ex. 2) In response, plaintiff requested an investigation into these events. (Id., affidavit of plaintiff)

In June 2003, plaintiff's suspension was upheld. Plaintiff continued to seek reinstatement and filed requests for his personnel record and assorted documents. (Id., ex. 4) In April 2004, the Office of Professional Responsibility found plaintiff in violation of several provisions of FBI policy. In September 2004, plaintiff's "Top Secret" security clearance was revoked. Without top security clearance, he was unable to perform his IRS duties and was terminated in November 2004. (Id., exs. 6, 23)

Subsequently, it appears plaintiff pursued his administrative remedies challenging his termination. (Id., plaintiff's affidavit; exs. 1, 3, 15, 19, various statements of individuals interviewed during an investigation pursuant to 29 C.F.R.

4

§1614) Apparently unable to resolve the issues informally, plaintiff filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC").[6] Specifically, plaintiff challenged his termination for mishandling documents.[7] (D.I. 1, ex. 1) Defendants moved to dismiss the EEO administrative process for failure to file a prehearing statement and failure to adequately participate. (D.I. 7, ex. 1) Plaintiff did not respond to the motion to dismiss. The administrative judge dismissed the action with prejudice on the following grounds:

> During the telephone conference of February 18, 2005, the parties were ordered to submit prehearing statements. [Plaintiff] was ordered to submit a prehearing statement on or before March 11, 2005 and [defendants were] ordered to submit [their] prehearing statement on April 1, 2005. The [defendants] complied with the order. [Plaintiff] failed to comply with the order.
> The [defendants] noted that [plaintiff] had failed to comply with a previous order compelling the [plaintiff] to respond to the [defendants'] discovery request. As a result of [plaintiff's] actions, sanctions were imposed upon [plaintiff]. In addition, during the February 18, 2005 prehearing conference, the [plaintiff] was admonished for his failure to timely submit a witness list and informed that any further violations of orders may lead to sanctions. Despite the [defendants'] motion, [plaintiff] has neither submitted a pre-hearing statement or explained his lapse.

(D.I. 1, ex. 1) Plaintiff's case thereafter was dismissed with prejudice and remanded to the agency for a final agency decision.

---

[6]Because the parties have only supplied the administrative judge's final order, the court is unable to consider the filings and submissions made at other points in the administrative process. Since defendants have premised their motion to dismiss only upon plaintiff's failure to comply with the administrative judge's orders, the administrative filing requirements prior to this period are deemed satisfied and are irrelevant to the issues at bar.

[7]In this administrative action, plaintiff was named "complainant" against John D. Ashcroft, Attorney General U.S. Department of Justice, Federal Bureau of Investigation as "agency". (D.I. 1, ex. 1)

5

### III.    STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## IV. DISCUSSION

### A. Exhaustion of Administrative Remedies

Section 717 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, "proscribes federal employment discrimination and establishes an administrative and judicial enforcement system." Brown v. General Services Administration, 425 U.S. 820, 829 (1976). A federal employee seeking redress for unlawful workforce discrimination must first pursue and exhaust administrative remedies against his federal employer before filing suit in federal court. 42 U.S.C. 2000e-16(c). Specifically, plaintiffs filing claims under Title VII and the ADEA must first exhaust administrative remedies before filing suit in federal court.[8] See Gillet v. King, 931 F. Supp. 9, 12 (D. D.C. 1996)(Title VII case dismissed due to plaintiff's failure to exhaust); Rann v. Chao, 346 F.3d 192 (ADEA case dismissed for failure to exhaust). The exhaustion requirements and time

---

[8] The Title VII federal employee must pursue and exhaust administrative remedies before filing in district court. Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997). In contrast, the ADEA federal employee has two alternative routes to judicial review: (1) file directly in federal court with certain time and notice requirements; or (2) invoke the EEOC's administrative process and then sue if dissatisfied with the results. Rann v. Chao, 346 F.3d 192, 194-195 (D.C. Cir. 2003).

7

limitations are "rigorous", yet were carefully and thoughtfully crafted by Congress.[9] Brown, 425 U.S. at 829, 833.

The purposes of the exhaustion requirement are to "promote administrative efficiency, 'respect executive autonomy by allowing an agency the opportunity to correct its own errors,' provide courts with the benefit of an agency's expertise, and serve judicial economy by having the administrative agency complete the factual record." Robinson v. Dalton, 107 F.3d 1018, 1020 (3d Cir. 1997) (quoting Heywood v. Cruzan Motors, Inc., 792 F.2d 367, 370 (3d Cir. 1986)); Wade v. Secretary of the Army, 796 F.2d 1369, 1377 (11th Cir. 1986). It is the defendant's burden to prove by a preponderance of the evidence that plaintiff failed to exhaust administrative remedies. Brown v. Marsh, 777 F.2d 8, 13 (D.C. Cir. 1985). Conclusory allegations that plaintiff failed to exhaust administrative remedies will not satisfy defendant's burden. Id.

In limited circumstances, courts are permitted to equitably toll administrative filing requirements. Dalton, 107 F.3d at 1018. The plaintiff bears the burden of proving that he is entitled to equitable tolling; it is within the court's discretion to determine whether tolling is appropriate. Olson v. Federal Mine Safety and Health Review Comm'n, 381

---

[9] For example, a federal employee must consult the federal agency's Equal Employment Opportunity counselor prior to filing a written complaint with the agency accused of discriminatory practices. 29 C.F.R. § 1614.105(a); 29 C.F.R. § 1614.106(a)-(c). The agency must conduct an investigation into the matter. The employee may demand an immediate final decision from the agency or a hearing before an EEOC administrative judge. 29 C.F.R. § 1614.106(e)(2); 29 C.F.R. § 1614.108(f). An administrative judge shall be appointed to fully adjudicate the complaint including development of the record and conduct a hearing. Id. § 1614.109(a). The employee may then file a civil action after receiving a final decision or after a complaint has been pending before the EEOC for a least 180 days. 42 U.S.C. §§ 2000e-16e, 1614.407.

F.3d 1007, 1014 (10th Cir. 2004); Biester v. Midwest Health Services, Inc., 77 F.3d 1264, 1267 (10th Cir. 1996).

Mental incapacity, involving unusual circumstances, has been recognized as a basis for equitable tolling of statutes of limitations. See e.g., Lake v. Arnold, 232 F.3d 360, 370-371 (3d Cir. 2000); Nunnally v. MacCausland, 996 F.2d 1, 6 (1st Cir. 1993)(equitable tolling appropriate where plaintiff was a paranoid schizophrenic, experienced hallucinations and suffered from illogical thought patterns). However, the alleged mental illness must be demonstrated and compelling. See, e.g., Smith-Haynie v. District of Columbia, 155 F.3d 575, 580 (D.C. Cir. 1998)(equitable tolling not appropriate where plaintiff did not understand EEOC right to sue letter, was traumatized and unable to go to work and face alleged harasser); Hedges v. United States, 404 F.3d. 744, 753 (3d Cir. 2005)(depression and pro se status insufficient to justify equitable tolling); Powell v. Independence Blue Cross, Inc., 1997 WL 137198 (E.D. Pa. Mar. 26, 1997)(mental illness must prevent plaintiff from managing her affairs and understanding and acting on her rights).

Plaintiff admits that he did not cooperate at the EEOC level. (D.I. 14, ex. 12) The record reflects that plaintiff wrote letters and pursued administrative remedies as part of his efforts to have defendants reconsider his termination. After plaintiff filed his complaint with the EEOC, for reasons undocumented by the administrative judge, plaintiff stopped participating in the administrative process. Although plaintiff was advised of his obligations, he did not comply with filing requirements or provide an explanation for his noncompliance.

Plaintiff requests that his past noncompliance be excused because he was suffering from emotional problems and marital difficulties that caused him to be too exhausted to perform daily activities, including participating in the EEOC action. (Id.) Specifically, plaintiff avers:

> As the court recollects previously in this matter, I admitted to be suffering from undiagnosed and untreated anxiety and depression during the beginning of this litigation.[10] Unfortunately this condition probably started around the time of my initial suspension. The reasons for my failure to meet the deadlines at the EEOC were the same. During this three year period, and subsequent to my firing, my wife initially separated and then divorced me because of the stress induced by accusations made by the FBI. There were times during the period of the EEOC hearing that I was too exhausted to perform normal daily functions and paralyzed with fear. I was not able to contemplate or take effective action in the litigation. I made the bet effort possible that I was capable of at the time. Without a job, I was unable to retain legal counsel on my behalf. It was only later on after I was diagnosed and treated for depression and anxiety. I have been on medication for nearly a year since being diagnosed.

(D.I. 14, plaintiff's affidavit ¶ 12) Additionally, plaintiff has presented copious statements regarding the events in issue. Absent from these submissions, however, is any independent evidence demonstrating the problems he asks the court to consider in order to excuse his failure to exhaust administrative remedies. Significantly, there are no medical records, doctor reports, prescription receipts or statements from

---

[10]Plaintiff filed his complaint on May 27, 2005. (D.I. 1) After plaintiff did not respond to the court's order to show cause based on his failure to serve process on defendants, the court dismissed the case on March 13, 2006. (D.I. 2, 3) On April 12, 2006, plaintiff's motion to reopen the case was granted. (D.I. 5) In said motion, plaintiff described suffering from "extended emotional and mental stress due to the circumstances surrounding [his] case." (D.I. 4) This stress contributed to "difficulties in [his] organizational skills, [his] ability to focus and follow through on projects and clouded [his] own perception of [his] performance. These deficiencies only became apparent . . . when [plaintiff] sought professional counseling services when the stress manifested itself to anxiety attacks." (Id.) Plaintiff further informed that he was receiving professional treatment and medication for these issues.

independent individuals cognizant of plaintiff's problems. Considering this record in light of cases involving equitable tolling, the court finds plaintiff has not demonstrated compelling reasons to excuse his failure to exhaust administrative remedies.[11]

### B. Federal Employees Compensation Act

Plaintiff contends that he was injured after being exposed to anthrax as part of his HAZMAT work. The Federal Employees Compensation Act ("FECA") guarantees injured federal employees the "right to receive immediate, fixed benefits, regardless of fault and without need for litigation" from their federal employer "but in return they lose the right to sue the government." Lockheed Aircraft Corp. v. United States, 460 U.S. 190, 194 (1983); 5 U.S.C. § 8116(c). In light of FECA, plaintiff cannot proceed with this claim. To the extent he is seeking to recover for future injuries, that claim, although not ripe for review, is barred by FECA. Similarly, to the extent that plaintiff is seeking compensation if "there are adverse conditions that arise later", this claim is not ripe for review.

### C. Discrimination by FBI

Plaintiff challenges defendants' practice of not hiring applicants with color vision deficiency as discriminatory. He also contends this policy is applied arbitrarily to exclude certain applicants, including him, from employment as a special agent. His letters to the FBI Director wherein he sought reconsideration of this policy were denied.

---

[11]Relatedly, plaintiff submits that his failure to exhaust should be excused because the administrative judge stated she was unable to grant the relief plaintiff sought, e.g., reinstatement. Whether the administrative judge questioned her authority does not excuse plaintiff from the exhaustion requirements. Likewise, plaintiff's contention that this action should be treated as one for wrongful termination does not remove the exhaustion requirements.

11

To the extent that plaintiff is asserting this claim under Title VII or the Rehabilitation Act, he must first exhaust his administrative remedies before filing suit.[12] Spence v. Straw, 54 F. 3d 196 (3d Cir. 1995). His failure to do so, as discussed above, precludes this claim.

### D. Other Discriminatory Acts

Plaintiff's last claim is that defendants committed other discriminatory acts that he cannot detail without the assistance of counsel.[13] (D.I. 1 at 7) By his voluminous submissions, however, plaintiff has sufficiently evinced an ability to coherently organize and explain his allegations without the assistance of counsel. For each of the three preceding claims, plaintiff has presented his legal arguments with his recollection of the facts surrounding the events. His averred inability to provide similar elaboration on this fourth claim is unavailing and presents insufficient evidence to enable a jury to find for plaintiff. Anderson, 477 U.S. at 249.

### V. CONCLUSION

An order consistent with the memorandum opinion shall issue.

---

[12] The Rehabilitation Act was passed, in part, "to promote and expand employment opportunities" for handicapped individuals. Spence v. Straw, 54 F. 3d 196 198-199 (3d Cir. 1995).

[13] Plaintiff's motion for appointment of counsel was denied without prejudice on August 8, 2006. (D.I. 13)

12